2024 IL App (1st) 241846-U

No. 1-24-1846B

Order filed December 13, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 24 CR 2126 |
| vs. | ) ) | |
| TERRANCE THOMAS, | ) ) | Honorable Nicholas Kantas, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the circuit court's order, where the defendant failed to comply with Illinois Supreme Court Rule 604(h), so as to allow meaningful appellate review.

¶ 2     Defendant Terrance Thomas appeals the circuit court's order continuing his detention. Thomas was arrested and charged after Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act), was enacted.[1] For the following reasons, we affirm.

---

[1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. *Raoul* lifted the stay of pretrial release provisions and set an effective date of September 18, 2023. *Id.* ¶ 52; Pub. Acts 101-652, § 10-255, 102 1104, § 70 (eff. Jan. 1, 2023).

¶ 3                                    I. BACKGROUND

¶ 4          Thomas was arrested following a routine traffic stop which occurred on February 17, 2024 and he was subsequently charged with two counts of aggravated unlawful use of a weapon (AUUW).

¶ 5          The next day, the State filed a petition for pretrial detention hearing, pursuant to sections 110-2 and 110-6.1 of the Code (725 ILCS 5/110-2, 110-6.1 (West 2024)). The petition alleged that Thomas committed an eligible offense (AUUW) as listed in section 110-6.1(a)(1) of the Code and that he poses "a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case." Specifically, the State relayed that:

> "Officers conducted a traffic stop while on patrol, on a [C]hevy vehicle that did not have any plates affixed to it. Officers made contact with [Thomas], the driver of the vehicle. Officers detected the strong odor of fresh cannabis emanating from the vehicle. Officers observed a large bulge in [Thomas's] front waistband. Officers asked [Thomas] and a passenger out of the vehicle and recovered a loaded handgun from [Thomas's] waistband during a protective pat down. [Thomas] is on probation for reckless conduct and on parole for a 2017 Aggravated Domestic Battery–Strangulation."

The petition further alleged that no combination of conditions could mitigate the risk Thomas poses.

¶ 6          On February 26, 2024, the court entered a written detention order using a template form that lists the requisite three propositions—(1) the proof is evident or the presumption great that the defendant has committed a detention eligible offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific articulable facts of the case, and (3) no condition or combination of conditions of release can mitigate that threat. On lines provided below each proposition, the court wrote specific facts from the case that it relied upon to

reach its findings. Beside the preprinted finding for the first proposition, the court wrote, "Agg UUW." For the second proposition, the court wrote, "[Thomas] had a weapon while on probation and parole." For the third proposition, the court wrote: "[Thomas] was on both parole and probation while charged w/UUW." The order noted that less restrictive conditions would not prevent Thomas's willful flight from prosecution because Thomas "does not regard probation or parole," and indicates that Thomas is to be detained pending trial. Thomas did not appeal this order, nor is a transcript of this hearing included in the appeal.

¶ 7     On April 2, 2024,[2] Thomas was arraigned and the court evaluated Thomas's continued detention. At the hearing, defense counsel noted that Thomas is a father of two six-year-old children. Thomas is a victim of gun violence and has been shot multiple times. He has been hospitalized and has had multiple surgeries and blood transfusions. Because of his hospitalization, he was not present at the time of his first scheduled court appearance. Thomas financially supports his two children and has a location where he could stay on electronic monitoring (EM). Counsel argued that there are less restrictive conditions outside of incarceration that would protect the safety of the community.

¶ 8     The State proffered that the charged incident occurred on February 17, 2024 at approximately 6:58 p.m. in the 6700 block of South Halsted Street in Chicago. Police officers conducted a traffic stop on a vehicle that did not have affixed license plates. As the officers approached the vehicle, they observed Thomas in the driver's seat and detected the odor of cannabis emanating from the vehicle. They also observed a large bulge in Thomas's waistband area. The police officers requested Thomas exit the vehicle and Thomas indicated that he had

---

[2]While the transcript of the hearing reflects a date of March 2, 2024, the State noted in its memorandum that the hearing on Thomas's continued detention took place on April 2, 2024. At the beginning of the hearing, defense counsel notes that Thomas had been in the hospital but does not offer any further timeline.

cannabis in his front sweatshirt pocket. Upon conducting a safety pat-down, they recovered an uncased, loaded handgun from Thomas's waistband. Officers conducted a LEADS check and discovered that Thomas has neither a Firearm Owner's Identification card (FOID) nor a concealed carry license (CCL).

¶ 9 At the time the instant offense occurred, Thomas was on probation for an earlier firearm offense (originally charged as unlawful use of a weapon by a felon (UUWF) but later reduced to a misdemeanor charge). The misdemeanor probation case arose following an incident where a police officer was patrolling Union Station with a drug canine. Thomas was waiting to board an Amtrak train when the canine alerted to his bag. Thomas gave consent to have his bag searched, and police officers located a small amount of cannabis, a look-alike Smith and Wesson nine-millimeter paintball gun, a nine-millimeter drum magazine loaded with actual ammunition, and another magazine loaded with ammunition, approximately 12 rounds in total. Thomas received two years' probation, which began on May 3, 2023.

¶ 10 At the time of both incidents detailed above, Thomas was on parole for an aggravated domestic battery (strangulation) offense. During the domestic battery, Thomas pinned the victim against the wall and used his forearms to press against the victim's neck. He repeatedly banged the victim's head into the ground, and the victim lost consciousness for approximately five minutes. Thomas began throwing furniture around the apartment. While in police custody following this incident, Thomas struck his own head against the processing door, denting the door multiple times. His parole discharge date for the offense was May 10, 2024.

¶ 11 Accordingly, the State took the position that there are no conditions of release that would be able to prevent Thomas from being a danger to the community and that there are no conditions that would be able to ensure Thomas's compliance with court orders. The State highlighted that Thomas was on parole when he was charged in two new cases, involving ammunition and a

firearm. After the Amtrak offense, the State contended, Thomas was given an extremely generous offer of probation, and yet—while on probation and parole—he again failed to comply with the court's orders and was arrested for illegal possession of a firearm. The State noted that Thomas's parole had been discharged a month prior to the hearing date (in March 2024).

¶ 12    Defense counsel countered that prior to the February 2024 arrest, Thomas was doing well on probation and noted that he is a lifelong Cook County resident and is not a flight risk. Counsel reiterated that Thomas would like to be placed on EM and that none of the facts the State alleged regarding the firearm cases involved any threat of violence. The State rebutted that "the Five-seven handgun is also referred to as the 'cop killer round' because it penetrates the body armor of police officers."

¶ 13    A probation officer who was present in court noted that, prior to his most recent arrest, Thomas was reporting twice each month, had completed random drug testing that indicated negative results, and had made payment toward his probation fees.

¶ 14    Following argument, the court stated that it had considered the facts of the instant case and Thomas's background and found it notable that Thomas continues to be arrested on new charges while under the court's monitoring. The court detailed that Thomas was on parole when he was charged with another felony, which was reduced to a misdemeanor. Thomas was then on two types of supervision when he was arrested in the instant case. The court found that based on Thomas's history, Thomas would not be compliant with the court's rules and that no lesser conditions than detention could prevent Thomas from being charged with another felony or Class A misdemeanor.

¶ 15    On September 5, 2024, Thomas filed a "Motion for Relief Under the Pretrial Fairness Act," requesting the trial court review its August 8, 2024 order denying him pretrial release.[3] See Illinois

---

[3]The transcript provided in the record for the August 8, 2024 hearing is dated August 8, 2023. This appears to be a scrivener's error.

Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). Thomas argued that the State failed to meet its burden to prove that (1) he poses a real and present threat to the safety of any person(s) or the community based on the specific, articulable facts of the case, (2) he poses a risk of willful flight to avoid prosecution, and (3) no conditions can mitigate the real and present threat he poses. Last, Thomas contended that the court erred in its determination that no conditions would reasonably ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 16     On that same day, the court held a hearing on Thomas's motion. Defense counsel argued that the State had failed to prove that Thomas is a threat to the safety of the community, where his UUWF charge is inherently a nonviolent offense. Counsel further contended that there is a combination of conditions the court could impose with which Thomas could comply to negate any risk. Counsel highlighted that Thomas lives in Chicago, is an owner of his own business, works part-time for a moving company, and has severe medical issues resulting from him being twice shot. Moreover, Thomas was not receiving sufficient medical care while in custody and has financial obligations (supporting his two children and his mother) to which he needs to attend.

¶ 17     The State countered that Thomas was on probation for a misdemeanor (reduced from UUWF following the tender of "significant mitigation") when he was charged in the instant case. He received probation after being arrested in possession of "a look-alike paintball gun with a drum magazine with real ammunition inside of it while he was at an Amtrak station waiting to board the train to go to Wisconsin." Further, Thomas had a 2012 misdemeanor conviction for unlawful use of a weapon, for which he received one year supervision, and he was on parole for aggravated domestic battery when he was arrested in the AUUW case. The State proffered the facts of the instant case, consistent with their April 2, 2024 proffer, but included an explanation that the recovered "firearm was an FN 57 caliber, which holds the cop killer rounds which can penetrate

police body armor." The State ultimately requested the court continue Thomas's pretrial detention.

¶ 18   The court noted in its oral ruling that it was considering the "arguments of the parties in what amounts to basically a motion to reconsider this Court's previous ruling as to this defendant's detention." The court noted that Thomas was before the court on August 8, 2024, when the court heard the facts of the case as well as his background. The court highlighted Thomas's 2012 firearm conviction, 2017 domestic battery conviction, and the fact that Thomas was on both parole and probation when he was arrested in the instant case. Further, Thomas was arrested with a firearm that can hold body armor piercing rounds. The court disagreed with defense counsel's argument that firearm possession is not a violent offense and noted the frequent occurrence of criminal cases where someone is murdered with a firearm. The court found the proof evident and the presumption is great that Thomas committed the offense where the firearm was recovered from Thomas's waistband. The court held that Thomas poses a real and present threat to the safety of the community and found that no condition beyond detention can mitigate the real and present threat that Thomas poses, where he was already on parole and probation at the time of his arrest.

¶ 19   On the same day, Thomas filed a notice of appeal pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), listing August 8, 2024 and April 2, 2024 as the "date(s) of hearing(s) regarding pretrial release."

¶ 20                                    II. ANALYSIS

¶ 21   Thomas did not file a memorandum with this court, choosing instead to stand on the arguments he made in his motion for relief. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (establishing that the motion for relief will serve as the appellant's argument on appeal, and allowing, but not requiring, the appellant to file an additional memorandum in support). Thus, on appeal, we are limited to the arguments made in Thomas's motion.

¶ 22   Thomas claims the court should not have detained him following his August 8, 2024

detention hearing because: (1) the State failed to meet its burden to prove that he poses a real and present threat to the safety of any person(s) or the community based on the specific, articulable facts of the case, (2) the State failed to prove that he poses a risk of willful flight to avoid prosecution, (3) the State failed to prove that no conditions can mitigate the real and present threat he poses, and (4) the court erred in its determination that no conditions would reasonably ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 23    The State filed a responsive memorandum, arguing that the trial court needed only to consider whether Thomas's continued detention was necessary. The State contends that Thomas failed to challenge the sole issue before the court on a continued detention hearing, but that the evidence proffered nonetheless demonstrated that Thomas's continued detention was necessary. In a footnote, the State notes that based on the record of what occurred on August 8, 2024 hearing, "[p]resumably, defendant was asking the court to review its April 2, 2024 ruling." Additionally, the State argued that—should this court consider the arguments raised in Thomas's motion for relief—Thomas had waived his second and fourth arguments, where he did not raise them at the hearing on the motion for relief.

¶ 24    "Pretrial release is governed by section 110 of the Code as amended by the Act." *People v. Morales*, 2023 IL App (2d) 230334, ¶ 4 (citing 725 ILCS 5/110-1 et seq. (West 2022)). Pursuant to the Code, "it is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant shall attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022). Under the Code, all persons charged with an offense are eligible for pretrial release before conviction. *Id*. The court may deny pretrial release only upon a verified petition by the State and following a hearing. 725 ILCS 5/110-6.1(a) (West 2022). It is the State's burden to prove by

clear and convincing evidence that (1) the presumption is great or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022). The standard "requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d 347, 362 (2004).

¶ 25    Where a defendant has previously been ordered detained, the "statute also imposes a continuing obligation for the court to assess whether continued detention is necessary." *People v. Hongo*, 2024 IL App (1st) 232482, ¶ 21. In such cases, as here, the proper question before the court is whether continued detention is necessary "to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022). In determining whether continued detention is appropriate, "the Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13.

¶ 26    As required by section 110-6.1(i-5), the finding required at a continued detention hearing "is simply a less demanding standard than what is required at the detention hearing, though both are concerned with fundamentally the same question." *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. Where a trial court finds "that the State presented clear and convincing evidence on all three elements required by section 110-6.1(e), that finding necessarily encompass[es] the continued detention finding required by section 110-6.1(i-5)." *Id*. We review the circuit court's determination on continued detention for abuse of discretion. *Id*. ¶ 16; *People v. Casey*, 2024 IL App (3d) 230568, ¶¶ 11-13; *People v. Walton*, 2024 IL App (4th) 240541, ¶ 40. A trial court abuses

9

its discretion only when (1) its decision is arbitrary, fanciful, or unreasonable, or (2) no reasonable person would take the view adopted by the court. *People v. Towns*, 2020 IL App (1st) 171145, ¶ 44.

¶ 27 In his notice of appeal, Thomas lists both August 8, 2024 and April 2, 2024 as the "date(s) of hearing(s) regarding pretrial release" from which he is appealing. In his notice in lieu of memorandum filed with this court, Thomas argues that the court held an initial detention hearing on April 2, 2024, and ruled again on his detention on August 8, 2024. In a footnote, Thomas argues that the version of Illinois Supreme Court Rule 604(h)(3) that was in effect at the time he filed his notice eliminated any filing timing requirements, and therefore allows review of his "initial" April 2, 2024 finding. The State contends that Thomas's initial pretrial detention hearing took place on February 26, 2024, after he was released from the hospital. As previously mentioned, there is no transcript in the record from the February 26 hearing, nor was this decision appealed. However, as the State argues, this court may take judicial notice of the computerized docket of the clerk of the circuit court of Cook County for case No. 24-CR-2126. See *People v. Schulz*, 2024 IL App (1st) 240422, ¶ 12; *People v. Jimerson*, 404 Ill. App. 3d 621, 634 (2010) ("a reviewing court may take judicial notice of public records and other judicial proceedings"). The docket indicates that an initial pretrial detention hearing was held on February 26, 2024, and the court entered an order that same day reflecting its findings. Accordingly, the April 2, 2024 hearing was a continued detention hearing and not an "initial" detention hearing.

¶ 28 Regardless of whether the April hearing was an initial or continued detention hearing, Thomas clearly states in his motion for relief that he is appealing the court's "August 8, 2024 decision denying pretrial release." Each of his subsequent arguments is made in relation to the "detention hearing [that] was held in front of [the] court on August 8, 2024." Illinois Supreme Court Rule 604(h)(2) mandates that "[u]pon appeal, any issue not raised in the motion for relief

*** shall be deemed waived." Paragraph (h)(7) of the rule further dictates that "whether made in the motion for relief alone or as supplemented by the memorandum, the form of the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities." Ill. S. Ct. R. 604(h)(7).

¶ 29        Here, Thomas included no argument regarding the April 2, 2024 hearing in his motion for relief. And, contrary to the footnote included in Thomas's notice in lieu of memorandum that "[n]either party expressed an objection to Thomas's initial appearance being included in the motion for relief hearing as well," the September 5, 2024 transcript indicates that the parties' arguments did not address *any* court hearing outside of August 8, 2024. While the State presumes Thomas must have intended to appeal the April 2 hearing, we cannot make that assumption where Thomas repeatedly states he is appealing the decision of the August 8 hearing. Accordingly, Thomas has waived any issues arising from the April 2 hearing, where he did not raise such in his motion for relief. See *People v. Nettles*, 2024 IL App (4th) 240962, ¶ 30 (noting that Illinois Supreme Court rules are not mere suggestions and should be enforced as written); *cf. People v. Drew*, 2024 IL App (5th) 240697, ¶ 44 (parties should not be allowed to circumvent the rules and ignore the importance of placing the argument first before the trial court).

¶ 30        Further, the record before this court reveals that on August 8, neither Thomas nor his attorney were present and the court heard no argument regarding Thomas's continued detention. Instead, the State represented to the court that the parties had agreed to continue the case to September 5, 2024, for another detention review. And on September 5, the court held a hearing on Thomas's motion for relief. Thomas failed to provide sufficient specificity in his motion for relief so as to enable meaningful appellate review of the April 2 continued detention hearing and provided a transcript which directly contradicts his explanation of the events of the August 8 court

date. Moreover, the arguments Thomas raised in his notice in lieu of memorandum fail to challenge what would have been the sole issue before the court on a continued detention hearing—namely, whether his continued detention was necessary to avoid a safety threat or prevent his willful flight. Therefore, Thomas has failed to put the matter before us for review. See *id.*, ¶¶ 39-43 (observing that appellate review under Rule 604(h) is limited to the arguments raised in the motion for relief). Accordingly, we affirm the trial court's August 8 order. See Ill. S. Ct. R. 604(h)(7).

¶ 31                                    III. CONCLUSION

¶ 32         For the reasons stated, the circuit court's order is affirmed.

¶ 33         Affirmed.